IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23-CR-583 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA G. BONCHEK, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by and through its counsel, Carol M. Skutnik, Acting United States Attorney, and Stephanie Wojtasik, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding Defendant Patricia Bonchek's sentencing. For the reasons explained below, and those to be advanced at the sentencing hearing, the United States submits that a sentence of imprisonment within the Guidelines range from the PSR, which uses a Guidelines calculation consistent with the parties' plea agreement, is appropriate.

I. **FACTUAL BACKGROUND.**

To support its sentencing position, the United States offers the following summary of the facts. The PSR and the factual basis from the parties' plea agreement also include a description of Bonchek's offense conduct.

Bonchek victimized four individuals, leaving each of them threatening voicemails. She specifically selected two victims who worked at Cleveland Jewish News, a weekly Jewish newspaper in Beachwood, because they were Jewish. Bonchek left B.J., an editor at Cleveland Jewish News, a voicemail calling B.J. "fucking scum" who was going to pay for B.J.'s "disgusting, reptilian, vile, Jewish, disgusting, pathetic, untalented ways as human beings." Bonchek said she would "fuck [B.J.] up." Bonchek also left A.M., an employee at Cleveland Jewish News, a

voicemail claiming, "You killed my Jesus Christ in 33 A.D.! You bitch! You fucking bitch[.]" Bonchek told A.D. that she was "going to fuck [A.D.] up" and that "Jew boys are dirty, rotten, faggots."

Bonchek did not save her ire for just B.J. and A.D. She further targeted J.F., a detective with the Beachwood Police Department who was investigating her. Bonchek left J.F. a voicemail screaming, "Fuck you! Don't you ever call me again, you fucking faggot! I'll fuck you up!"

Bonchek also harassed her ex-husband, J.B. She left J.B. several threatening messages. In the first message, she told J.B. that she had "fucking guns" and a "back up army," and that she planned to "fuck [J.B.] up and take everything in that fucking house" that was Bonchek's. She told J.B.: "I am on my way on a bus, you stupid Jew slimy fucking reptile. I will fucking kill you." In a second message, Bonchek told J.B. she was "going to come to [J.B.'s] fucking house … soon, unannounced, with a back-up team that loves and supports me." "I am fucking coming for you, you fucking whore. I will fucking kill you!" Bonchek concluded. She continued to leave J.B. threatening messages even after J.B. took out a restraining order against her.

II.     **APPLICABLE LEGAL STANDARDS.**

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quotation omitted). After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a).

2

III. **SENTENCING GUIDELINES COMPUTATION.**

    A. Bonchek's Guideline range is 27 to 33 months in prison.

The United States agrees with the Guidelines calculation in the PSR and the parties' plea agreement.

For the group constituting Count 1, Bonchek's base offense level is 12 under U.S.S.G. § 2A6.1(a)(1). A three-level enhancement applies under Section 3A1.1(a) because Bonchek intentionally selected the victim (B.J.) because of the victim's religion or ethnicity. That brings the adjusted offense level for Count 1 to a 15.

Counts 3 through 6 group under Section 3D1.2(b). This group has the same total offense level of 12 pursuant to Section 2A6.1(a)(1). A two-level enhancement applies under Section 2A6.1(b)(2)(A) because the offense involved more than two threats. And a two-level enhancement applies under Section 2A6.1(b)(3) because the offense involved the violation of a court protection order. That makes the total adjusted offense level for this group a 16.

Count 7 constitutes another group. This group has the same total offense level of 12 pursuant to Section 2A6.1(a)(1). A three-level enhancement applies under Section 3A1.1(a) because Bonchek intentionally selected the victim (A.M.) because of the victim's religion or ethnicity. That brings Count 7's adjusted offense level to a 15.

Bonchek then received a three-level increase after the multiple count adjustment under Section 3D1.4.

That brought Bonchek's combined adjusted offense level to a 19. After a three-level reduction for acceptance-of-responsibility pursuant to Sections 3D1.1(a) and (b), Bonchek's total offense level became 16.

Bonchek received six criminal history points. That put her in criminal history category III.

With a total offense level of 16 and a criminal history category of III, Bonchek's advisory Guidelines range is 27 to 33 months imprisonment.

      B.      <u>The facts support, beyond a reasonable doubt, that Bonchek targeted B.J. and A.M. because of their religion or ethnicity.</u>

Bonchek properly received a three-level enhancement under Section 3A1.1(a) because she intentionally selected two of her victims because of their religion or ethnicity. Bonchek admitted in the plea agreement's factual basis that she intentionally selected B.J. and A.M. because of their religion. She further did not object to this enhancement being included in either the plea agreement's or the PSR's Guidelines calculation. The Sixth Circuit found these facts sufficient to establish beyond a reasonable doubt that the enhancement applied. *See, e.g.*, *United States v. Wolfe*, No. 21-4204, 2022 WL 17609467, at *7 (6th Cir. Dec. 13, 2022). Beyond that, Bonchek specifically targeted B.J. and A.M. because they worked for Cleveland Jewish News and made profane and vulgar statements about their religion in the voicemails she left them. The facts taken as a whole establish beyond a reasonable doubt that the three-level enhancement under Section 3A1.1(a) properly applies.

IV.      **APPLICATION OF THE 18 U.S.C. § 3553(A) FACTORS.**

      A.      <u>Bonchek's continued choice to harass her victims justifies a Guidelines sentence.</u>

The impact of Bonchek's offense conduct spans further than just the voicemails she left her victims. Her threats and harassments made the victims fear for their safety. And the effect on J.B., as explained in their victim impact statement to the Court, is "unmeasurable," and the repercussions are "still playing out." J.B.'s children's "lives have been forever changed. It will take years of therapy to unwind the deep-rooted pain that has changed once children, then adolescen[ts] and now men, forever," J.B. writes.

4

Her actions were not the product of mistake or a temporary lapse in judgment. She did not leave just one person one voicemail. Instead, time and time again, Bonchek chose to continue threatening and harassing people. Each time, she had an opportunity to realize what she was doing was wrong and change her behavior. But she persisted.

The nature and circumstances of Bonchek's offense therefore weighs toward imposing a Guidelines sentence of imprisonment.

> B. Bonchek's history of committing similar crimes shows that lesser sanctions have not been an effective deterrent.

This is not the first telephone harassment crime Bonchek committed. In April 2020, authorities arrested Bonchek after she made approximately 30 false emergency calls to various police departments in northeast Ohio. In these calls, Bonchek falsely claimed concerns about domestic violence, assaults, and emergency childbirth. The court originally sentenced her to two years' probation. But she violated her probation twice and ultimately served approximately 21 months in custody between the two violations. Her sanctions there did not deter her from committing the crimes here.

She also has a track record of violating court protection orders. In January 2020, Bonchek was arrested for disorderly conduct because she violated a court protection order by texting her ex-husband. She received two years' probation. Three months later, she violated the no-contact order imposed by that court. The court later found her guilty of the probation violation and sentenced her to thirty days in custody.

As a result of her actions, Bonchek has multiple protective orders currently levied against her. In July 2020, the San Diego Sheriff's Office issued a protection order against Bonchek because she allegedly harassed and threatened a woman, her husband, and three children. That order is set to expire in July 2025. Then in May 2021, the Geauga County Sheriff's Office issued

5

a protection order against Bonchek for Jeffrey Bonchek, Asher Bonchek, and Lauri Pierce. That order is set to expire in August 2026. And in October 2022, the Erie County Sheriff's Office issued a protection order against Bonchek for a woman that is set to expire in October 2027.

And despite facing federal charges, Bonchek continued engaging in similar conduct. In August 2024, Bonchek contacted the family members of one of her victims, specifically J.B.'s mother, and left her harassing voicemails. Bonchek called J.B.'s mother a "cunt," "bitch," "whore," and "devil." Bonchek further told J.B.'s mother that she "ruined her life." (*See* R. 27: Warrant Request, PageID 83). And Bonchek sent the I Promise School in Akron hundreds of pages of letters containing harassing and explicit comments.

At bottom, Bonchek's pattern of breaking the law by committing similar crimes demonstrates that prior sanctions have not been a deterrent. Imposing a Guidelines sentence of imprisonment would afford adequate deterrence and promote respect for the law.

    C.    <u>To protect the public, Bonchek's sentence should include mental health treatment and no-contact orders.</u>

As discussed in the PSR, Bonchek has a significant history of mental health problems. While Bonchek may be resistant, to protect the public, the Court should require that she undergo mental health treatment.

The Court should further impose no-contact orders prohibiting Bonchek from contacting any of the victims in this case, J.B.'s family, and the I Promise School. This is necessary to protect the public from further crimes of the defendant.

V.      **CONCLUSION.**

    For the reasons explained above, and those the government will advance at the sentencing hearing, the United States respectfully requests that the Court impose a term of imprisonment within the Guidelines range from the PSR and the parties' plea agreement.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By:   */s/ Stephanie Wojtasik*
        Stephanie Wojtasik (OH: 0097858)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3856
        (216) 522-8355 (facsimile)
        Stephanie.Wojtasik@usdoj.gov